IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NYANNA M. F., § <br> § <br> Plaintiff, § <br> § <br> V. § <br> § <br> KILOLO KIJAKAZI, Acting § <br> Commissioner of Social Security, § <br> § <br> Defendant. § | No. 3:20-cv-1673-BN |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nyanna F. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is reversed.

**Background**

Plaintiff alleges that she is disabled as a result of spinal cord surgery, a neck fusion, anxiety, and depression occurring since February 13, 2018, the alleged date of onset. *See* Dkt. No. 22 at 1-2. After her application for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on September 11, 2019. *See id.* at 2. At the time of the hearing, Plaintiff was 56 years old. *See id.* She has a tenth-grade education and past work experience as a telemarketer. *See id.* Plaintiff has not engaged in substantial gainful activity since February 13, 2018. *See id.*

On September 20, 2019, the ALJ issued an unfavorable decision regarding Plaintiff's application for benefits, applying the five step sequential analysis. *See id.*

1

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. *See* Dkt. No. 19-1 at 35. At step two, the ALJ found the medical evidence established Plaintiff suffered from medically determinable and severe impairment due to spine disorders, and that she likewise had medically determinable mood disorders and polysubstance abuse, but that these impairments were non-severe. *See id.* At step three, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 37. The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work, except the claimant can stand/walk for six hours per day and can sit for six hours per day, with lifting/carrying occasionally twenty pounds and frequently ten pounds with no more than mild mental limits and with occasional stooping, frequent climbing of ladders, ropes, or scaffolds, and with limited overhead reaching bilaterally." *See id.* Relying on a vocational expert's testimony, at step four the ALJ found that Plaintiff was capable of resuming her past relevant work as a telemarketer "as actually performed," and, as such, had not been under a disability, as defined in the Social Security Act, from February 13, 2018 through the date of the decision. *See id.* at 40.

Plaintiff appealed the decision to the Appeals Council, which denied her request for review on April 10, 2020. *See* Dkt. No. 18-1 at 1. Plaintiff then filed this action in federal district court, challenging the hearing decision on the grounds that (1) the ALJ erred at step two by failing to apply the correct standard in determining

2

the severity of Plaintiff's mental impairments, and (2) the ALJ's RFC finding was not supported by substantial evidence.

## Legal Standard

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial

evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* But the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

### I. The ALJ's failure to apply the correct legal standard in evaluating Plaintiff's mental impairments requires remand

Plaintiff contends that the ALJ applied the wrong legal standard in determining that her mental impairments were non-severe. While the Commissioner concedes that the ALJ "could have offered more detail" in his analysis, he nonetheless argues that the ALJ applied the correct standard and that his decision is supported by substantial evidence. Dkt. No. 23 at 8-9.

In *Stone v. Heckler*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment or combination of impairments is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). The ALJ is also "required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express

6

statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106. Notwithstanding this presumption, the Court must look beyond the use of 'magic words' and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard, or that the ALJ's application of the incorrect standard was harmless. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept. 4, 2012), *rec. adopted*, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted*, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011) (applying harmless error analysis in *Stone* error cases).

In addition to the severity standard used to evaluate all impairments, the Social Security Regulations provide even more precise standards to evaluate the severity of a claimant's mental impairments at each level of the administrative process. *See* 20 C.F.R. § 404.1520a. This two-step evaluation is referred to as the "special technique." 20 C.F.R. § 404.1520a(a). If the ALJ concludes that a claimant has a medically determinable mental impairment, he must assess and rate the functional limitations caused by the impairment(s). 20 C.F.R. § 404.1520a(c). These four functional areas, known as the "Paragraph B" criteria, are: (1) understanding and remembering, or applying information; (2) interaction with others; (3) concentration, persistence, and pace; and (4) adapting and managing oneself. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00C. Each area is

rated on a five-point scale as either none, mild, moderate, marked, or extreme. *See* 20 C.F.R. § 404.1520a(c)(4). The regulations require the ALJ to document his application of the special technique to the claimant's mental impairments. 20 C.F.R. § 404.1520a(e). Violation of this regulation constitutes reversible error, but such error requires remand only when a reviewing court concludes that the error is not harmless. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir.2003).

At step two, the ALJ states that Plaintiff's "mood disorder and polysubstance abuse are considered to be non-severe," but offers no explanation for how he reached that determination. *See* Dkt. No. 19-21 at 35-37. Restating portions of Plaintiff's medical records, the ALJ noted multiple reports documenting Plaintiff's symptoms, diagnoses, and treatment related to depression and substance abuse between February 2018 and September 2019. Dkt. No. 19-1 at 36. The ALJ also acknowledged medical opinions regarding Plaintiff's functional limitations, including that "[h]er judgment is poor," her physical and mental problems "have left her tense, unhappy, and have probably impaired her ability to concentrate on or perform important life tasks," and "[h]er prognosis for competitive employment is poor." *Id*. Confusingly, the ALJ concluded his step two analysis by finding that "[t]he above medically determinable impairments" – which included Plaintiff's mental impairments – "significantly limit the ability to perform basic work activities as required by SSR 85-28." *Id*. at 37. But, despite impliedly finding Plaintiff's mental impairments medically determinable and noting that they significantly limited her ability to perform work

8

activities, noticeably absent from the ALJ's step two discussion is any mention or discernable application of the special technique.

The Commissioner contends that, "while the ALJ did not articulate every piece of evidence available in the record," he nonetheless "follow[ed] the technique in a permissible manner." Dkt. No. 23 at 8. Specifically, the Commissioner argues that the ALJ effectively "explained and applied" the "meat" of the regulation's requirements – the assessing and ranking of Plaintiff's functional limitations from "none" to "extreme" in four essential areas – "by way of citing the record's analysis by psychological examiner Richard Campa, Ph.D." who "found *no* limitations in two categories and only *mild* limitations in the other two categories, which falls short of the minimum one category of *extreme* limitation or two categories of *marked* limitation." *Id*. at 9 (emphasis in original).

The Commissioner cites the Fifth Circuit's unpublished decision in *Onishea v. Barnhart* as the basis for the contention that an ALJ may rely on a state agency medical consultant's ("SAMC") function-by-function assessment of a claimant's exertional limitations in lieu of applying the special technique. *Id*. at 8; *see* 116 F.App'x 1 (5th Cir. 2004). But this reliance is misplaced.

The Court in *Onishea* held that the ALJ, who was required under *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001) and SSR 96-8p to make a function-by-function analysis of a claimant's ability to do work-related activities, had not committed a legal error by basing his RFC assessment, in part, on the state examiner's function-by-function analysis of the claimant's exertional limits. *Onishea*, 116 F.App'x at 1. This

9

holding – that at step four an ALJ may rely on an SAMC's assessment of a claimant's physical exertional limitations – has little relevance to the issue in this case, which is whether an ALJ may at step two fulfill his duty to assess and rank a claimant's mental functional limitations by referencing, without discussing, a state psychological examiner's report.

But, even were the Court to accept that reference to an SAMC's functional limitation findings suffices as proper application of the special technique at step two, that is not what happened here. Contrary to the Commissioner's assertion that "the ALJ explained and applied [the special technique] analysis by way of citing the record's analysis by psychological examiner Richard Campa, Ph.D.," the ALJ's step two analysis – the step at which the ALJ determined Plaintiff's mental impairments were non-severe and at which the Plaintiff complains the ALJ failed to apply the correct legal standard – contains no reference, mention, or citation to Dr. Campa, his report, or his findings.

As discussed above, the ALJ must apply the special technique at every step of the analysis, and "[t]he ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described." *Westover v. Astrue*, No. 4:11-cv-816-Y, 2012 WL 6553102, at *8 (N.D. Tex. Nov. 16, 2012) (citing 20 C.F.R. § 404.1520a(e)(4)). Because the ALJ does not cite or discuss the special technique, nor give an explanation indicating he considered Plaintiff's functional limitations in the

four areas in reaching his severity determination, the Court cannot conclude he applied the correct legal standard.

Having concluded that the ALJ legally erred in making his severity determination, the question remains whether the error is harmless. The Commissioner argues that, issues with the ALJ's special technique application notwithstanding, any step two error the ALJ committed could not have prejudiced Plaintiff because (1) an ALJ's failure to assess the severity of a claimant's impairments at step two is not a basis for remand where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, retained the residual functional capacity to do other work; and (2) the ALJ's determination that Plaintiff's mental impairments were non-severe is supported by substantial evidence.

Neither argument is persuasive.

As noted above, while an ALJ's failure to properly apply the severity standard was previously grounds for automatic remand, courts now view the presumption that legal error occurred as rebuttable by a showing that the error was harmless. *Compare Scroggins v. Astrue*, 598 F. Supp. 2d 800, 806-07 (N.D. Tex. Jan. 27, 2009); *Sanders v. Astrue*, 2008 WL 4211146, at *8 (N.D. Tex. March 21, 2014) *with Lacy v. Colvin*, No. 3:13-cv-1312-BN, 2013 WL 6476381, at *8 (N.D. Tex. Dec. 10, 2013); *Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013). In the wake of this shift "[m]any courts have presumed that [such an error] is harmless where the analysis continues beyond Step 2." *Middleton v. Colvin*, No.

3:13-cv-2647-BN, 2014 WL 1158894, at *4 (N.D. Tex. March 21, 2014) (citing *Lederman v. Astrue*, 829 F. Supp. 2d 531, 539 (N.D. Tex. 2011).

But this line of cases refers to instances in which the ALJ has erred in stating or applying the severity standard clarified by *Stone*, not the mental impairment-specific severity standard which Plaintiff contends the ALJ misapplied here. In the context of the *Stone* severity standard, courts have declined to remand where an ALJ failed to properly state or apply the severity standard to an impairment at step two but nonetheless proceeded to analyze the impairment at a subsequent step. *See Jones v. Astrue*, 821 Supp.2d 842, 850 (N.D. Tex. 2011). This is because the ALJ's treatment of an impairment as severe at later steps allows the district court to infer that the ALJ did find the impairment severe, despite not explicitly stating so in the step two analysis. *See id*. But, contrary to the Commissioner's assertion, courts have held that such an error is not harmless – even where the analysis continues beyond step two – where the ALJ applies an incorrect severity standard, then "explicitly rejects one of more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to the other claimed impairments." *Id*.

Where, as here, the issue is whether a special technique error, not a *Stone* error, was harmless, the answer turns on whether the Plaintiff's substantial rights were affected. *See Mays*, 837 F.2d at 1364. Put another way, the Court must determine whether it is conceivable that the ALJ would have reached a different conclusion absent the error. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

Here, after finding at step two that Plaintiff's mental impairments were non-severe without discussion of the special technique, the ALJ proceeded to step three on the basis that Plaintiff had severe physical impairments. But, at step three, the ALJ did not identify which listings, if any, he considered, nor did he apply the technique or discuss Plaintiff's mental impairments. The ALJ's step three determination is limited to a section headline, which states, without supporting analysis, that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment. *See* Dkt. No. 19-1 at 37. Before proceeding to step four, the ALJ considered Dr. Darrel Horton's consultive psychiatric examination and states that he gave it "partial weight" because "there is no detailed functional capacity evaluation, and the conclusions are confusing and inconsistent with the overall evidence." *Id*. at 38. He also gave "partial weight" to the SAMC's evaluation, noting that the "State Agency assessments indicated the claimant had no more than mild mental limits" but that "the Agency had not seen the entire record when making its determinations." *Id*. at 39. In other words, while the ALJ referenced the SAMC's findings and discounted its accuracy, he still did not address the technique or his findings regarding the degree of Plaintiff's limitations in the four functional areas. At step four, the ALJ's RFC determination did not include any provision for mental limitations.

Because the ALJ did not employ the required psychiatric review technique at steps two or three, or while determining Plaintiff's RFC, and because he indicates that he only partially relied on the SAMC's assessment, the Court cannot determine

13

whether the ALJ's decision regarding the severity of Plaintiff's mental impairments is supported by substantial evidence. *See Satterwhite*, 2002 WL 1396957, *1-2; *see also, e.g.*, *Goin v. Astrue*, No. 3:12-CV-02471-B-BK, 2013 WL 1130050, at *5 (N.D. Tex. Feb. 19, 2013) (concluding that where a non-frivolous claim of mental impairment exists, the ALJ's failure to follow the psychiatric review technique and make the required findings constitutes legal error and requires remand), *adopted by* 2013 WL 1131272 (N.D. Tex. Mar. 19, 2013); *Cruz v. Colvin*, No. EP-12-CV-00179-ATB, 2013 WL 3338591, at *10 (W.D. Tex. July 1, 2013) ("The ALJ's failure to apply the special technique and follow the regulations prevents effective review by the Court and is therefore not harmless."); *compare Byrd v. Barnhart*, 58 F. App'x 595 (5th Cir. 2003) (holding that because "the ALJ conducted the same kind of comprehensive examination she would have had she completed the [PRT]," her failure to complete the PRT did not affect the claimant's substantial rights and was harmless error).

And the ALJ did not discernably determine Plaintiff's functional limitations or account for her mental impairments at subsequent stages of the sequential analysis such that the Court could, in the style of courts reviewing *Stone* errors, infer that the ALJ applied the correct legal standard.

It is conceivable that, had the ALJ properly adhered to the regulations he would have come to a different disability determination. Accordingly, the error is not harmless, and remand is required for reconsideration of Plaintiff's mental impairments using the special technique set forth in 20 C.F.R. § 404.1520a. *See*

*Satterwhite* 2002 WL 1396957 at *2 (expressing "no opinion on whether [the plaintiff] will prevail on the merits of her mental impairment claims," and holding only "that the regulations require the ALJ to specifically evaluate these claims and document his findings accordingly").

## II. The ALJ's RFC Determination

Plaintiff also argues that the ALJ erred in determining that she had the residual functional capacity to perform her past relevant work "as actually performed." Because the Court is remanding the case for the ALJ to reconsider its decision at step two regarding the severity of Plaintiff's mental impairments, which may affect the RFC determination, the Court declines to address this argument.

## Conclusion

For the reasons explained above, the hearing decision is reversed, and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: February 25, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE